UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GERALD JONES,

        *Plaintiff,*

v.

JPMORGAN CHASE BANK N.A., and AGUSTIN VELASCO,

        *Defendants.*

-------------------------------------------------------------X

15 cv _____

**COMPLAINT**

Plaintiff, GERALD JONES (hereinafter "JONES"), by his attorneys, THE HARMAN FIRM, PC, as and for his Complaint of employment discrimination on the basis of disability and sexual orientation in violation of the New York City Human Rights Law ("NYCHRL"), as well as Family Medical Leave Act ("FMLA") retaliation against Defendants alleges as follows:

## JURISDICTION AND VENUE AND NATURE OF ACTION

Jurisdiction of this Court is proper pursuant to 28 USC § 1332, in that Plaintiff JONES is a citizen of the State of New Jersey, Defendant JPMORGAN CHASE BANK N.A. (hereinafter "CHASE") is a citizen of the State of Ohio, Defendant Agustin Velasco (hereinafter "VELASCO") is a citizen of the State of New York, and the amount in controversy exceeds the requisite amount of $75,000.

Venue is properly laid in this Court in that the unlawful conduct giving rise to this Complaint occurred within the Southern District of New York, at Defendant CHASE's premises, located 158 West 14th St, New York, NY 10011.

This action seeks damages under the NYCHRL and the FMLA.

## PARTIES

1. Plaintiff JONES is a resident of the State of New Jersey.

2. At all times relevant and hereinafter mentioned, Defendant CHASE, was and is a domestic business corporation, duly existing pursuant to and by virtue of the laws of the State of Ohio.

3. At all times relevant and hereinafter mentioned, Defendant CHASE has offices located at 270 Park Avenue, New York, New York 10017.

4. At all relevant times Defendant VELASCO was Plaintiff's direct supervisor and employed by CHASE as a district manager, working out of CHASE'S offices at 4 New York Plaza, New York, New York, 10004.

5. At all times relevant and hereinafter mentioned, Plaintiff JONES was an employee of Defendant CHASE. Plaintiff was employed by Defendant CHASE during the relevant period in the role of Branch Manager.

## DEMAND FOR TRIAL BY JURY

6. Plaintiff demands a trial by jury.

## FACTUAL BACKGROUND

7. In or about September 1996, Plaintiff JONES began working for Defendant CHASE as an Assistant Treasurer after twelve years (12) of success in the financial field.

8. Plaintiff JONES was an exceptional employee with a progressive career at Chase. He was on the list of potential candidates for District Manager in the NY Tristate Region, and earned numerous trips due to his high sales performance in both positions at Chase as a Banker and Branch Manager.

9. For the first several years of his tenure at CHASE he never received written warnings nor verbal discipline from his superiors.

10. From December 2009 until on or around December of 2014 when Plaintiff JONES was illegally terminated, Plaintiff JONES met or exceeded all expectations imposed by Defendant CHASE and won several awards for his performance.

11. However, Plaintiff Jones' work experience changed for the worse when he became a Branch Manager of the branch located at 158 West 14th Street, New York, NY ("Chelsea Branch").

12. Plaintiff JONES worked tirelessly to ensure the functioning of the Chelsea Branch, even when confronted with major issues out of his control such as construction work, and the constant breakdown of branch escalators and elevators.

13. Despite the numerous challenges Plaintiff JONES faced at the Chelsea Branch, he persevered and would regularly work over sixty-five (65) hours a week without taking a lunch break.

14. Plaintiff JONES is a gay man, and his District Manager, Agustin Velasco (hereinafter "Defendant VELASCO") would often make derogatory and offensive statements regarding homosexuals.

15. For instance, Defendant VELASCO said that Managers needed to be particularly careful with homosexual employees because they are "highly sensitive," and that any negative reviews "kill your career."

16. In addition to making explicitly homophobic comments, Defendant VELASCO also made unreasonable and impossible demands of Plaintiff JONES, intentionally making his job more difficult, as he viewed Plaintiff JONES as weak and highly sensitive.

17. On information and belief, Defendant VELASCO sought to destroy Plaintiff JONES' career, at least in part, because Plaintiff JONES is gay.

18. For instance, VELASCO told Plaintiff that he should not be at his desk, but rather on the floor engaging with customers <u>at all times</u> to promote express banking kiosks and increase customer experience, even though to explicitly follow the supervisor's instructions made it impossible to complete his other managerial tasks. Nevertheless, Plaintiff JONES worked as directed.

19. As part of the renovation of the branch, Plaintiff JONES' branch was scheduled to relocate the same weekend that he was away to attend a funeral in South Carolina. He stayed in contact with his team, who informed him that they did not think it was a good time to relocate since both employees and customers were unready for the move. Plaintiff JONES relayed the message to Defendant VELASCO who tried to assure him that everything would be fine if they opened on March 17, 2014 as planned.

20. Defendant VELASCO repeatedly urged Plaintiff JONES to "get to know" the auditor better, as VELASCO believed the auditor was also a gay man, and sought to exploit Plaintiff JONES' sexual orientation.

4

21. Plaintiff JONES' found Defendant VELASCO's constant use of gay stereotypes and fixation on sexual orientation as offensive and inappropriate for the workplace, and a source of constant stress for Plaintiff JONES.

22. Defendant VELASCO's conduct had the effect of discouraging Plaintiff JONES from raising the inappropriate behavior with him directly or with other CHASE employees.

23. On March 17, 2014 the re-opening of the branch occurred as planned. Plaintiff JONES felt an immediate change in the dynamic of branch. He now spent his time reassuring both his customers and his employees, as the new branch no longer had heat and there were no safety rails on any of the stairs and ramps, causing many customers to fall. Plaintiff JONES tried his best to make the best out of the difficult situation he was given, including securing space heaters from nearby branches.

24. In the new space, Plaintiff JONES was denied an office, in order to force him to spend more time on the floor with customers, at the expense of his other duties.

25. Many customers, particularly elderly customers, were upset about the conditions of the branch, and even feared for the safety of Plaintiff JONES and his employees. One customer wrote a letter to Defendant CHASE'S executive office complaining of the work conditions. These conditions created chaos at the branch, making the completion of work duties nearly impossible.

26. Defendant VELASCO visited Plaintiff JONES' branch more frequently, but only to discuss the OSAT and the upcoming audit. The working environment was chaotic and it was not a good time for an audit, as the branch could not adequately be prepared

27. Making matters worse, on or about July 30, 2014 Plaintiff JONES' father passed away; later that same day, his aunt passed away. He needed time off work to make funeral

arrangements and make elder care plan for his mother. He had sick and vacation time available, so he tried to reach out to Defendant VELASCO.

28. Defendant VELASCO called him numerous times to talk about the branch, at a time where he could not get to the phone. Plaintiff JONES felt pressured to return to work, and he knew that the Assistant Branch Manager, Alescia Graham, was scheduled to go on vacation.

29. Plaintiff JONES returned to work on or about August 11, 2014.

30. The following week, Ms. Graham was on vacation, and Plaintiff JONES was overwhelmed. He was expected to open and close the branch, and spend as much time on the floor as possible.

31. Later in August, Defendant VELASCO as well as CHASE's Market Manager spoke with Plaintiff JONES and Ms. Graham regarding discrepancies uncovered in an audit of the week of August 18, 2014.

32. CHASE's Market Manager assured Plaintiff JONES and Ms. Graham that CHASE would work to address conditions in the branch that led to the discrepancies. Plaintiff JONES was not warned or reprimanded during this meeting.

33. On or about September 9, 2014 and September 10, 2014, Plaintiff JONES raised his desire to take some time off from work.

34. On or about September 10, 2014, Plaintiff JONES met with a CHASE investigator to discuss the audit. Plaintiff JONES explained the results, and assured CHASE that there was no loss at the branch.

35. On or about September 11, 2014, Plaintiff JONES, feeling unwell at work, requested medical leave from CHASE.

36. On or about September 11, 2014 Plaintiff JONES was diagnosed with chronic fatigue after taking note of his frequent panic attacks at work, and insomnia at night. His doctor recommended he take some time off work until December 11, 2014 to recuperate, and prescribed him with medication. His doctor further provided him with a list of restrictions should he return to work including taking time during the workday to eat lunch, and maintain a forty (40) hour or less work week schedule.

37. Plaintiff JONES filed his disability claim on September 11, 2014. The week of September 15, 2014 he was contacted by JPMorgan Chase Disability Management services confirming receipt of his claim, and notified him that a decision would be made later that week by September 19.

38. On September 23, 2014 Defendant CHASE sent Plaintiff JONES a letter denying his disability claim, stating that they did not receive supporting medical documents. Plaintiff JONES' doctor resent the documentation requested.

39. On October 8, 2014, Defendant CHASE denied Plaintiff JONES' disability claim once again stating that the level of treatment does not support his disability. He requested to appeal the decision.

40. On or about October 15, 2014 Plaintiff JONES met with a mental health professional who diagnosed him with severe anxiety and severe depression. This doctor recommended he make an appointment, every two (2) weeks, and to take medications as directed. The doctor also recommended he take off from work until December 12, 2014.

41. Thereafter, the FMLA Department approved Plaintiff JONES' FMLA leave. The approval stated that he must return to work on December 4, 2014.

42. Plaintiff JONES returned to work on December 4, 2014 as directed, and notified the FLMA department and Defendant VELASCO.

43. Plaintiff JONES was terminated on December 9, 2014, less than one week after returning from FMLA leave.

44. In support of the pretextual termination, Defendant CHASE blamed issues that had arisen in the August audit; issues that had been raised earlier, prior to disability leave under the FMLA, and which had been addressed in an earlier meeting without incident.

45. Plaintiff JONES did not knowingly violate any of Defendants' policies, yet Defendants purported reason for terminating him arose from issues related to an audit. However, no performance issues were raised with Plaintiff JONES for many months after the audit, and only then after he took disability leave under the FMLA.

46. Plaintiff JONES was treated differently than his coworkers because of his sexual orientation, disability and use of FMLA leave. Ultimately, these factors led Defendants to terminate him for issues for which others were not terminated, or even reprimanded.

## FIRST CAUSE OF ACTION
### Sexual Orientation Discrimination in Violation of the NYCHRL Against ALL Defendants

47. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

48. Defendants subjected Plaintiff JONES to sexual orientation discrimination in violation of the NYCHRL.

49. Plaintiff JONES was subjected to offensive comments as well as unfavorable treatment from his District Manager, VELASCO, as described above.

50. VELASCO's discrimination was motivated by Plaintiff JONES' sexual orientation.

51. VELASCO's bias against Plaintiff JONES ultimately led to Defendants' termination of Plaintiff JONES.

52. The NYCHRL prohibits employers from, *inter alia*, terminating an employee because of his or her sexual orientation.

53. As a result, Plaintiff JONES suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Sexual Orientation Discrimination via Hostile Work Environment in Violation of the NYCHRL Against ALL Defendants

54. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

55. Defendants created and permitted hostile work environment based on Plaintiff JONES' sexual orientation, in violation of the NYCHRL.

56. Plaintiff JONES was subjected to offensive comments as well as unfavorable treatment from his District Manager, as described above.

57. The NYCHRL prohibits such hostile work environment discrimination and harassment.

58. As a result, Plaintiff JONES suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### Disability Discrimination under the NYCHRL against ALL Defendants

59. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force and effect as though separately alleged and reiterated herein.

60. Defendants discriminated against Plaintiff JONES because of his disability, in violation of the NYCHRL.

61. Plaintiff JONES informed Defendants of his mental health condition, and requested time off to treat it.

62. Defendants resisted JONES' efforts to take time off from work to treat his disability.

63. After Plaintiff JONES finally did secure disability leave, Defendants terminated him shortly after he returned from leave.

64. Defendants' termination of Plaintiff JONES so soon after he returned to work following disability leave indicates that a motivating factor behind his termination was his disability and/or his decision to take disability leave.

65. As a result, Plaintiff JONES suffered damages for past and future earnings, other employment benefits, attorney's fees, and emotional injuries in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## FMLA Retaliation - 29 U.S.C. § 2617 against Defendant CHASE

66. Plaintiff hereby realleges and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

67. At all times relevant hereto, Defendant CHASE was an employer within the meaning of the FMLA, as Defendant CHASE, upon information and belief, employs well over fifty (50) employees.

68. At all times relevant hereto, Plaintiff was employed by Defendant CHASE within the meaning of the FMLA, 29 U.S.C. § 2611, and the regulations thereunder.

69. Plaintiff repeatedly sought medical leave from Defendant CHASE, and, after several attempts, was finally granted FMLA leave to address his mental health issues.

70. Shortly after Plaintiff JONES returned from FMLA leave, Defendants terminated him.

71. Section 105 of the FMLA prohibits employers from, *inter alia*, retaliating against employees for exercising their rights under the FMLA.

72. Defendant CHASE retaliated against JONES for taking FMLA by terminating him upon his return from leave.

73. As a result of Defendant CHASE's violations, Plaintiff suffered damages for past and future earnings, attorneys' fees, and emotional injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(i) On the First Cause of Action, actual damages to be determined at trial, but no less than $500,000;

(ii) On the Second Cause of Action, actual damages to be determined at trial, but in no event less than $300,000;

(iii) On the Third Cause of Action, actual damages to be determined at trial, but in no event less than $500,000;

(iv) On the Fourth Cause of Action, actual damages to be determined at trial, but in no event less than $500,000;

(v) Punitive damages;

(vi) Attorneys' fees, disbursements and other costs; and

(vii) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 5, 2015

Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, PC
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY  10019
(212) 425-2600
wharman@theharmanfirm.com